IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER C. BENNETT, | ) | Case No. 1:16-cv-227 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

**I.     Introduction**

Plaintiff, Christopher Cornelius Bennett ("Bennett"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under Title II and Title XVI of the Social Security Act. This matter is before the court pursuant to 42 U.S.C. §1383(c)(3), 42 U.S.C. §405(g) and Local Rule 72.2(b).

For the reasons set forth below, it is recommended that the final decision of the Commissioner be VACATED and REMANDED.

**II.    Procedural History**

Bennett filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on September 8, 2010.[1] (Tr. 116, 168, 211). Bennett's applications

---

[1] Bennett also had a prior application for DIB and SSI filed on May 16, 2008. Tr. 164-67.

were denied initially on January 25, 2011, (Tr. 268, 271) and upon reconsideration on June 1, 2011 (Tr. 275, 278). On July 5, 2011, Bennett requested a hearing. (Tr. 281-82)

A hearing was held on November 27, 2012, before Administrative Law Judge ("ALJ") C. Howard Prinsloo. (Tr. 117-51). ALJ Prinsloo denied Bennett's claim for benefits on December 6, 2012, but the Appeals Council remanded the case and ordered the ALJ to: (1) obtain additional evidence, (2) further evaluate the nature and severity of Bennett's shoulder impairment and gout, (3) further consider Bennett's residual functional capacity assessment, and (4) if Bennett was found to be disabled, to conduct further proceedings to determine whether drug addiction or alcoholism are contributing factors. (Tr. 226-47, 250-51). A remand hearing took place on April 28, 2014, before ALJ Penny Loucas. (Tr. 70-121) ALJ Loucas denied Bennett's claim for relief on July 18, 2014. (Tr. 33-35). The Appeals Council denied review of that decision on July 18, 2014, rendering ALJ Loucas' July 18, 2014, decision the final decision of the Commissioner. (Tr. 1-4.)

**III.    Evidence**

Bennett asserts that he "does not dispute any of the facts of this case, and does not raise any dispute to the reasonableness of the ALJ's RFC [residual functional capacity] finding." ECF Doc. No. 15, Page ID# 1110. Bennett's sole argument is that the ALJ's finding that he could perform "other work" was not supported by substantial evidence because of a conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles. Id. at 1111-18. Based on the limited appeal, only the evidence relating to that argument will be summarized below.

      A.      **Medical Evidence**

The ALJ found plaintiff to have a severe impairment in his surgically repaired left shoulder. (Tr. 41) The ALJ determined plaintiff had the residual functional capacity to perform a reduced range of light work with the limitations that included: "only occasional overhead reaching with the non-dominant left upper extremity." (Tr. 51) The ALJ asked the Vocational Expert, Mark A. Anderson, ("VE") whether jobs existed in the national economy for someone of claimant's age, educations work experience and residual functional capacity. The VE identified three example occupations. But plaintiff argues that the occupations identified by the VE require frequent, not occasional, reaching. Because this argument focuses only on the condition of plaintiff's left shoulder, the court will briefly summarize the medical evidence relating to that part of plaintiff's body.

Plaintiff was seen at University Hospital on February 2, 2012 complaining of left shoulder pain following a January 27, 2012 fall at work. (Tr. 762) The differential diagnosis compared rotator cuff tendinopathy vs. bicep tendinitis. (Id.) He was instructed to take Naproxen and engage in physical therapy. (Id.) On February 17, 2012, Plaintiff saw Hetal Patel, M.D. at University Hospital for his shoulder pain, advising that he had improved range of motion after taking Naprosyn. (Tr. 759) Plaintiff was instructed to switch to Tylenol and continue physical therapy and range of motion exercises. (Tr. 760) Plaintiff was seen by Kyhati Patel, M.D., at University Hospitals on July 9, 2012 for his complaints of left shoulder pain, indicating he'd had it "for one year." (Tr. 756) Dr. Patel recommended warm compresses and Tylenol PM for pain. (Tr. 757) On January 20, 2013 Robert Gillespie, M.D., diagnosed plaintiff with a left rotator cuff tear that required surgery. (Tr. 804) Surgery was performed on February 22, 2013 and Dr. Gillespie indicated plaintiff was to have no activity for one month from the surgery date. (Tr. 814) On

March 20, 2013 Dr. Gillespie indicated that plaintiff "may not lift more than a tea cup w/ left arm." (Tr. 815)  On May 22, Dr. Gillespie's record stated: "He will make a full recovery at 5 to 6 months.  Right now, his limitations are no lifting at 5 pounds, this lifting restriction will continue for the next 6 weeks.  Following that he can lift up to 10 ponds and he would be released to work, released to all lifting between 5 and 6 months." (Tr. 1016)  He was given Ultram and a home exercise and stretching program. (Id.)

In a functional capacity evaluation performed at University Hospital's Geauga Medical Center on June 10, 2013 plaintiff was found to be able to tolerate frequent above shoulder reaching. (Tr. 831)

Because plaintiff has not challenged the ALJ's findings with respect to plaintiff's medical conditions, his handling of the opinions of the treating, non-treating, consulting and non-acceptable medical sources, the court is not setting forth a summary of that evidence here.

### B. Vocational Expert Testimony

Vocational Expert Anderson testified at Bennett's April 28, 2014, hearing. (Tr. 92-114) Before proposing hypothetical questions, the ALJ asked the VE if there were any jobs for a claimant who could "only use his left nondominant arm as a guide; he can help lift but he can't support it alone, which means he more or less has to use his right hand for doing everything.  He can use his left hand as a guide; no reaching overhead." (Tr. 92)  The VE stated that there was work that could be done with one extremity and stated he was consulting the Journal of Forensic Vocational Analysis (summer 2008). (Tr. 93-00).

The ALJ then posed a hypothetical, asking the VE to assume a person who has the residual functional capacity to perform light exertion; never climb any ladders, ropes or

4

scaffolds; overhead reaching with the left, his nondominant arm, limited to occasional; who can understand, remember, and carryout instructions consistent with performing work at SVP 1 or SVP 2 levels or work further described as work that can be learned with a short demonstration or within 30 days; can maintain concentration, persistence, and pace for work at SVP 1 or SVP 2 levels or work that is further described as work that can be learned with a short demonstration or within 30 days; can interact up to occasionally with the general public, coworkers, and supervisors to speak, signal, take and carryout instructions; and limited to routine changes in a workplace setting. (Tr. 100-01) The ALJ asked if the individual in the first hypothetical could perform Bennett's past work. (Tr. 101) The VE responded that the hypothetical individual could not, but that they could perform other work as a paint spray inspector – *DOT* 741.687-010 (jobs: 2,500 local, 6,000 state, 118,000 national); laboratory sample carrier – *DOT* 922.678-054 (jobs: 3,000 local, 18,000 state, 175,000 national); and a hand can and closing machine tender – *DOT* 529.685-282 (jobs: 3,000 local, 15,000 state, 185,000 national). (Tr. 101-02)

**IV.     Standard for Disability**

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

5

experience, engage in any other kind of substantial gainful work which exists in the national economy[2]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment,[13] claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

V.     **The ALJ's Decision**

---

[2] "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

The ALJ issued a decision on July 18, 2014.  A summary of her findings are as follows:

1. Bennett meets the insured state requirements of the Social Security Act through December 31, 2013.  (Tr. 40)

2. Bennett had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date.  (Tr. 40)

3. Bennett has the following severe impairments: Residual effects from surgically repaired non-dominant left shoulder rotator cuff impairment, obesity, gouty arthritis, depression, and learning disorder.  (Tr. 41)

4. Bennett does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (Tr. 45)

5. Bennett has the residual functional capacity ("RFC") to perform a reduced range of light work with the following limitations.  He can never climb any ladders, ropes, or scaffolds.  **He could perform only occasional overhead reaching with the non-dominant left upper extremity.**  He is further limited to understanding, remembering and carrying out instructions consistent with performing work at SVP 1 or SVP 2 level or work that is further described as work that can be learned with a short demonstration or within thirty days.  He can maintain concentration, persistence, and/or pace for work at SVP 1 or SVP 2 level or work that is further described as work that can be learned with a short demonstration or within thirty days.  He can interact up to occasionally with the public, coworkers, and supervisors to speak, signal, take instructions, and carry out instructions.  He is limited to routine-type changes in the workplace setting.  (Tr. 51)  (Emphasis added)

6. Bennett is unable to perform any past relevant work.  (Tr. 57)

7. Bennett was born on June 23, 1964, and was 47 years old, which is defined as a younger individual, on the alleged disability onset date.  The claimant subsequently changed age category to closely approaching advanced age.  (Tr. 58)

8. Bennett has at least a high school education and is able to communicate in English.  (Tr. 58)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled."  (Tr. 58)

10. Considering Bennett's age, education, work experience, and RFC, there are

>jobs that exist in significant numbers in the national economy that he can perform. (Tr. 58)

Based on these findings, the ALJ determined that Bennett had not been under a disability since January 1, 2012, through the date of the decision. (Tr. 59)

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the

evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

  **B.**  **Conflict between VE's testimony and *DOT***

Bennett's sole argument is that the ALJ erred by relying on the VE's testimony that Bennett could perform other work because the VE's testimony conflicted with the companion publication to the *Dictionary of Occupational Titles* ("*DOT*"), *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("*SCO*"). ECF Doc. No. 15 at Page ID# 1111-18. Specifically, Bennett contends that the three jobs identified by the VE and relied upon by the ALJ require at least frequent reaching and the ALJ's RFC limited Bennett to "only occasional overhead reaching with the non-dominant upper extremity." (Tr. 51) The Commissioner acknowledges that the ALJ failed to ask the VE about any potential conflicts in the VE's testimony, but counters that such error is harmless because there were no conflicts between VE evidence and the *DOT*. ECF Doc. No. 18, Page ID# 1135.

SSR 00-4p sets forth "the actions required of an ALJ when there is an apparent conflict between the testimony of the vocational expert and the *DOT*." *Martin v. Comm'r of Soc. Sec.*, 170 Fed.Appx. 369, 374 (6th Cir.2006). In pertinent part, SSR 00-4p provides:

> [B]efore relying on VE or VS [Vocational Specialist] evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between the occupational evidence provided by the VEs and VSs and information in the [*DOT*], including its companion publication, the [*SCO*]…and Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00–4p, 2000 WL 1898704, at *1 (SSA Dec. 4, 2000). SSR 00-4p also imposes an "affirmative responsibility" on ALJs to ask about any possible conflicts between the VE testimony and information provided in the *DOT*. S.S.R. 00–4p, 2000 WL 1898704, at *2, *4; ("[VE testimony] should be consistent with the occupational information supplied by the *DOT*…the adjudicator will inquire, on the record, as to whether or not there is such consistency."), *See also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

10

Neither the testimony of a VE nor the occupational descriptions in the *DOT* necessarily trumps the other.  *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008).  However, if there appears to be a conflict with the *DOT*, the ALJ must obtain a "reasonable explanation" for the apparent conflict.   Id.  SSR holdings "are binding on all components of the Social Security Administration [and] represent precedent final opinions and orders and statements of policy and interpretations that [have been] adopted." 20 C.F.R. § 402.35(b)(1).

At the hearing, the ALJ did not ask whether the VE's opinions were consistent with the *DOT* and, if not, whether there was a reasonable explanation for the conflict.  (Tr. 92-113)  Despite this, the ALJ's decision stated: "The undersigned has determined that Mr. Anderson's testimony is consistent with the job classification information contained in the *Dictionary of Occupational Titles* and its companion volume, *Selected Characteristics of Occupations* (Soc. Sec. Rul. 00-4p) (Tr. 59)  Absent from the ALJ decision is any explanation of *how* the ALJ made that determination.

However, unless the VE's testimony actually conflicts with the *DOT*, such error is harmless.  *Renfro v. Astrue,* 496 F.3d 918, 921 (8th Cir.2007*)* ("In sum, the ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the *Dictionary of Occupational Titles* was harmless, since no such conflict appears to exist.") (Emphasis original); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Harris v. Comm'r of Soc. Sec. Admin.,* No. 1:11-CV-1290, 2012 WL 4434078, at *4 (N.D. Ohio Sept. 24, 2012); *Stull v. Astrue, No.* 3:10–CV–00693, 2011 WL 830633, at *7–9 (N.D.Ohio Jan.18, 2011).

For the following reasons, the undersigned finds that the ALJ's error is not harmless because the VE's testimony appears to conflict with the companion publication to the *DOT*. Here, the ALJ determined that Bennett could make a successful adjustment to "other work that

11

exists in significant numbers in the national economy," based on the VE's testimony that Bennett could perform work as a paint spray inspector – *DOT* 741.687-010; laboratory sample carrier – *DOT* 922.678-054 ; and a hand can and closing machine tender – *DOT* 529.685-282. (Tr. 101-02) Bennett contends that all three of the jobs identified by the VE require at least frequent reaching and, therefore, conflict with the ALJ's RFC finding that he could "perform only occasional overhead reaching with the non-dominant left upper extremity." (Tr. 51).

The three jobs identified by the VE all require frequent reaching. See *SCO* at pp. 98,[3] 205,[4] and 259.[5] Frequent is defined as an activity or condition exists from 1/3 to 2/3 of the time. *SCO*, C-3, p. 641. Reaching is defined as "extending hand(s) or arm(s) in any direction."[6] Id. Thus, frequent reaching includes reaching overhead with both arms. The *DOT* does not distinguish between types of reaching or reaching with the left or right hand. It is unclear whether the ALJ decided (without stating) that the jobs identified by the VE could be performed while reaching with only one arm, here the right arm.

Most courts analyzing this issue have found a potential or apparent conflict between a *DOT* job description requiring frequent reaching and a claimant's limitation of no overhead reaching or occasional reaching with one arm. *See Pearson v. Colvin*, 810 F.3d 204, 211 (4th Cir. 2015) (remanding case due, in part, to apparent conflict between VE testimony and *DOT* –

---

[3] https://babel.hathitrust.org/cgi/pt?id=umn.31951d00286799y;view=1up;seq=112 (last visited December 1, 2016)

[4] https://babel.hathitrust.org/cgi/pt?id=umn.31951d00286799y;view=1up;seq=219 (last visited December 1, 2016)

[5] https://babel.hathitrust.org/cgi/pt?id=umn.31951d00286799y;view=1up;seq=273 (last visited December 1, 2016)

[6] https://babel.hathitrust.org/cgi/pt?id=umn.31951d00286799y;view=1up;seq=655 (last visited December 1, 2016)

*DOT* listed three jobs as requiring frequent reaching but ALJ found that claimant could only occasionally reach upward with nondominant arm); *Prochaska v. Barnhart,* 454 F.3d 731, 736 (7th Cir. 2006) (remanding the case due to the potential inconsistency between a limitation that claimant could only "occasionally reach above shoulder level" with the *DOT* requirement that the cashier's job required frequent reaching); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (finding a conflict between *DOT* job listing requiring constant reaching and RFC limitation that claimant could reach overhead only occasionally); *Jones v. Colvin,* No. 4:15-CV-00072-F, 2016 WL 4491764, at *2 (E.D.N.C. Aug. 26, 2016) (found conflict between RFC restriction of no overhead reaching with left arm and *DOT* requirement that housekeeping job includes frequent reaching); *Marquez v. Astrue*, No. CV-11-339-TUC-JGZ-DT, 2012 WL 3011778, at *3 (D. Ariz. May 2, 2012), *report and recommendation adopted*, No. CV 11-339-TUC-JGZ, 2012 WL 3011779 (D. Ariz. July 23, 2012) (finding a conflict between VE testimony that claimant limited in overhead reaching can perform particular jobs requiring frequent reaching in any direction.); *Jordan v. Astrue,* No. 09–CV1559–MMA, 2010 WL 2816234 (S.D.Cal. May 4, 2010) (finding conflict between VE testimony, that claimant limited to occasional overhead reaching with right shoulder could perform particular jobs, and *DOT* descriptions that jobs required frequent reaching); *Silvera v. Astrue,* No. CV–09–1935–JC, 2010 WL 3001619 (C.D.Cal. July 29, 2010) (finding that frequent reaching requirement in the *DOT* description potentially conflicts with claimant's restriction to perform only occasional overhead reaching because *DOT* does not distinguish overhead from other reaching); *Robertson v. Astrue*, No. 1:09CV87-SRW, 2010 WL 3488637, at *3 (M.D. Ala. Aug. 31, 2010); *Beeler v. Astrue*, No. 2:09-CV-649-GZS, 2010 WL 4791836, at *4 (D. Me. Nov. 17, 2010), *aff'd,* No. 09-CV-649-P-S, 2010 WL 5070889 (D. Me. Dec. 7, 2010) (*DOT* jobs requiring occasional reaching were

13

inconsistent with a limitation of no overhead work with right arm) *contra Lamear v. Colvin*, No. 3:13-CV-01319-AC, 2014 WL 6809751, at *2 (D. Or. Dec. 1, 2014) (case currently being appealed to the 9th Circuit) (noting that although other district courts have held that a limitation on overhead reaching with one arm conflicts with a *DOT* job description requiring reaching generally, the district court of Oregon  District has consistently held that no such conflict exists.)

In light of the *DOT*/*SCO*'s broad definition of reaching and the view adopted by the majority of courts addressing this issue, the VE's testimony regarding Bennett's ability to perform the three identified jobs is an apparent conflict with the *DOT*'s description of these jobs requiring frequent reaching.  And the ALJ improperly "determined" that no such conflict existed without saying how.  As the Seventh Circuit put it, "this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." *Prochaska,* 454 F.3d at 736.  Therefore, the ALJ's failure to inquire of the VE whether his testimony was consistent with the *DOT* was not harmless error; and the record does not present substantial evidence to support (i) the ALJ's determination that there was no conflict or (ii) her conclusion that Bennett can perform the paint spray inspector, laboratory sample carrier, and a hand can and closing machine tender jobs.  Given the foregoing findings, a vacation of the ALJ's decision and a remand to the Commissioner is required.

## VII. Conclusion

For the foregoing reasons, it is recommended that the final decision of the Commissioner be VACATED and the case be REMANDED, pursuant to 42 U.S.C. §405(g), for further proceedings consistent with this Report and Recommendation.

Dated: December 2, 2016

Thomas M. Parker
United States Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).